My name is Michael Lawrence. I represent Mr. Beardslee in this matter. If it pleases the Court, I'd like to reserve about seven minutes for rebuttal. The issue before this Court is whether or not a certificate of appealability should issue on Claim 39. That is, the challenge to the jury's consideration of special circumstance findings in this case, and whether or not those special circumstance findings, given the unique circumstances of this case, required a harmless error analysis to be conducted by the California Supreme Court, and whether or not the California Supreme Court properly conducted that analysis. This Court's decision in Sanders v. Woodford struck new ground in dealing with this type of issue, and the application of Sanders v. Woodford to the facts of this case compelled the conclusion that at the very least jurists of reasonableness would find this issue to be debatable among jurists. Kennedy, you know, before you get there, I don't know about the others on this panel, but I have a problem on whether we can issue a COA at all, even if we found your argument to be meritorious on the merits at this stage of the case after, you know, cert's been denied. As the Court noted in its order, this Court still has jurisdiction until the mandate issues. Until the mandate issues, the Court can do anything to facilitate justice, which includes granting a certificate of appealability when this Court's prior decision was clearly based on incorrect law. So, Your Honor, I believe that the Court clearly has jurisdiction in the matter to issue a certificate of appealability. It's an unusual posture for this case, to be sure, and we'll hear from the State on that. But why don't you continue? At this juncture, you view this as the standard for the COA being the same as the Miller-Ell standard for usual cases. I think the State has argued that at this stage we ought to consider it under the second or successive petition standard, which is much harder to meet. I took the State's argument with respect to the successor petition posture related to the staying of the mandate as opposed to the certificate of appealability. But under either standard, whether or not you apply a higher standard for staying the mandate given the particular posture of this case, or if you're going to enhance the certificate of appealability standard, the exceptional circumstances would satisfy both. As this Court recognized in Ford versus Brine v. Ford Motor Company, exceptional circumstances include changes in the law that affect this Court's previous decisions. And because Mr. Beardsley has not had the opportunity to brief the merits of Claim 39, we obviously are in a posture of asking for a certificate of appealability. Now, the question of how Sanders affects this case, I think, is threefold. First, for the first time, Sanders applied Clemens to a California determination that the death penalty was appropriate under the 1978 law. This is a finding that Sanders makes with respect to California's 1978 law being a weighing jurisdiction. It is a critical finding because prior to this Court's decision in Sanders, there was confusion as to whether or not Clemens would apply or whether or not the more the less rigorous standard of Vant v. Stevens would apply. And the dichotomy between the two standards was evident in the California Supreme Court's determination of why this is not harmful error. Under a weighing standard, that is, the standard that's enunciated in Clemens, an invalid special circumstance requires the reversal of the penalty unless the State court conducts an independent re-weighing of the aggravating and mitigating circumstances or the State court independently concludes the sentencer's consideration of the invalid aggravating circumstance was harmless beyond a reasonable doubt. That standard contrasts markedly with the standard that was applied by the California Supreme Court in this case. In a non-weighing jurisdiction, such as Georgia, where the aggravating circumstances don't serve to determine penalty but to determine eligibility for penalty, the standard is different. The presence of an invalid aggravating circumstance in a non-weighing State does not invalidate the death sentence in those jurisdictions if there is one valid aggravating circumstance which is remaining. And that, to me, is probably the most important aspect about Sanders, is that for the first time, Clemens applies two California death penalty determinations involving invalid aggravating circumstances. Secondly, Sanders applied Clemens to the California Supreme Court's treatment of these claims and held that the State court failed in two fundamental respects. Clemens requires the State supreme court to first recognize the constitutional dimensions of the claim, that is, by applying the Federal constitutional harmless error standard and holding the State to the task of proving beyond a reasonable doubt that the invalid special circumstances did not have an effect on the jury's determination. So recognition of the Federal nature of the claim is critical under Clemens. The second thing that Sanders did in showing why the California Supreme Court in that case was contrary to Clemens was that the California Supreme Court must articulate and apply the Clemens standards for determining the effect of an invalid circumstance. And that is the second issue is why Sanders has never been – the second issue why Sanders is critical to our determination of whether or not Claim 39 should be appealed. Finally, the third reason why Sanders is critical to this determination is that Sanders applied Brecht v. Abrahamson and identified several factors that are important to determining whether or not it is harmful, sufficiently harmful to require reversal under the standard. The three factors that Sanders identified included whether or not the jury likely considered the inappropriate aspects of the invalid special circumstances, whether it was easily discernible that led – what led the jury to impose death, and whether the case to the jury was close. These are three fundamental aspects of the application of Clemens to California's 1978 law that prior to the decision in Sanders was not available to Mr. Sanders and could not have been used to obtain a certificate of appealability from this Court. Application of these standards and that framework to the facts of Mr. Beardsley's case I think is more compelling than the facts that were presented in Mr. Sanders' case. There are some fundamental differences in how the jury arrived at its decision in Mr. Beardsley's case. In Mr. Beardsley's case, a jury determined guilt and the existence of special circumstances that was different from the jury that determined his penalty determination. The determination made by the jury in penalty was premised upon accepting as true and accepting as aggravating the special circumstance findings made by the previous jury. From beginning to end in this case, in the penalty phase, that jury was informed not only do those special circumstances are true and you must accept them as true by the prior jury, but you cannot go back and re-weigh them or evaluate them because you did not hear all the evidence that that prior jury heard. The jury was never told that affirmatively. One of the jurors was, Your Honor. Juror Martinez was told affirmatively in voir dire that the – No, but at the time they went into deliberations, they were not told that. They were not told that you – that there was evidence that was not presented to you, but one sitting juror clearly was told that during voir dire. Or that they couldn't re-weigh the circumstances. They were told they were supposed to consider the circumstances. But the critical element in this case that's different than Sanders' is that the special circumstance instructions that outline what constitutes the special circumstances in that case were provided to that jury. Our jury had no instructions whatsoever on how to find a special circumstance, particularly these special circumstances. I mean, wouldn't this be significantly different than if you'd had the same jury do both the guilt phase and the penalty phase? I'm not sure in the public case it would be. Because, you know, the guilt phase jury, having made the special cert findings, carries that with them as they go into the penalty phase. But at the very least – They've given careful thought. I mean, they've had to zero in on the special circumstances in reaching their verdicts. That's correct. And they carry that into the jury. You know, when they move next into the second phase of the trial, into the guilt phase, they have that with them. And here, Mr. Beardsley – I can't recall a lot of the details. I've not gotten deeply into all the background of the case because it's been a long time since I've looked at it in considerable detail. But I can't remember if it was Mr. Beardsley that – lawyers that requested the second jury. They had requested the second jury because of the prior murder that was going to be admitted at the penalty phase. I don't think there's a difference, however. There is a difference between a jury that considers and evaluates the weight of the evidence for the special circumstance finding and one that is told you must accept it as true, because the evidence that was presented at the penalty phase in mitigation went to the very heart of whether or not Mr. Beardsley acted with cold, uncalculated motive to kill witnesses. That was the prosecution's case in this case. And what happened at the penalty phase was the defense presented substantial evidence that showed this kind of crime was uncharacteristic for him, and evidence that he had mental impairments, which affected whether or not he could coldly and calculatedly commit this crime for the purpose of committing a witness killing. That jury didn't have the ability to weigh that evidence appropriately because they were told to accept the special circumstance finding as true. And the jury was told during the prosecution's argument on eight separate occasions, not only is a special circumstance true, but the witness killing, the reason why this crime is deserving of death is, one, because of he was cold and calculated and attempted to kill and did kill a witness to the crime. The entire prosecution's theory was given legal weight by the findings made by that previous jury. And the jury wasn't given any materials whatsoever, let alone instructions, with respect to able to evaluate the evidence in light of the prior jury's verdict, which I think is, I think, a very big distinction in this case between this and Sanders. The other important aspect about this case is just like Sanders, this case was close, and it was close for three fundamental reasons. First and foremost, the jury's deliberation occupied 23 hours over four days. It's not simply that this jury decided that the aggravating nature of the crime and the aggravating evidence presented at the penalty phase required them to impose a death sentence. They struggled for 23 hours to determine whether or not to sentence Mr. Beardsley to death. The second aspect, which I think is also fundamental, is that this jury, hearing the aggravating evidence, hearing the aggravating nature of this crime, decided that death was appropriate only for one of the killings and not the other. The fact that this jury did not impose a death sentence for the Stacey Benjamin crime is important information in this Court's consideration of whether or not the invalid special circumstances influenced the jury's decision. Doesn't that cut against you? Because if the theory is witness killing and the jury only imposed death for killing of one of the witnesses, doesn't that suggest that the jury had a different reason for its rationale? It does. It does suggest that there may have been another reason. But as this Court in Sanders indicated, it's not our job, many years later, to try to determine what influenced the jury, because we don't have findings from those jury as to why they sentenced somebody to death on one count and they didn't sentence somebody to death on the other count. My point in making that particular factual argument is that the evidence was not overwhelming in this case. If it had been overwhelming, we would have had two death sentences. And instead, this jury struggled for 23 hours and returned split verdicts. Well, no. It could have been overwhelming as to one, but not as to the other. A jury were told, in a sense, to consider the two separately, right? You're absolutely right. It could have been. I don't believe the evidence is overwhelming as to the Gedling murder versus the Benjamin murder. And I certainly can speculate as to reasons why the jury came back with a second non-death sentence. But as this Court cautioned us from doing in Sanders, if you are not convinced that you can determine what influenced the jury's decision, you must grant the writ and order a resentencing in the presence of an invalid special circumstance. The third reason why the error in this case was particularly prejudicial was the presence of several juror notes that the jury provided to the Court asking questions about the mitigation that was presented. Four of those notes mentioned either conditions that they would like to place on the sentence or expressly asking questions about the psychological and psychiatric issues that were raised by the mitigation. This jury is not one that is simply going to sentence him to death without considering the mitigation. The difference in this case is that they had to accept by the legal weight of the special circumstance finding the prosecution's argument that Mr. Beardsley had a motive to kill these witnesses as witnesses. And that changed the fundamental dynamic as to whether or not the jury could have considered and given full weight to the psychiatric evidence that was presented at the trial. The other issue that Sanders raises is whether or not the California Supreme Court adequately addressed this issue on appeal. And until Sanders was decided, we did not have a framework for understanding particularly how to look at the California Supreme Court's decisions in these matters. Under Clemens, a review by a State supreme court must offer a, quote, detailed explanation based on the record as to why the invalid aggravating circumstance was harmless. The court in Stringer v. Black used the words a thorough analysis of the role of the invalid aggravating circumstances. And Justice O'Connor in Soker v. Florida talked about having a principled explanation. If you don't have details or principled reasons why, the State supreme court concludes that the error is harmless. There has not been a sufficient Clemens determination on appeal. And the California Supreme Court's analysis in Mr. Beardsley's case suffers from the same defects that were present in Mr. Sanders' direct appeal as well. I should point out that this decision in Beardsley was also decided shortly after the Supreme Court's decision in Clemens v. Mississippi, only six months after the decision in Allen. And the framework that the California Supreme Court used in both Sanders and in our case are nearly identical. First, the California Supreme Court did not acknowledge that Clemens even applied to this case. It did not, as Sanders requires, acknowledge that there is a Federal dimension to the constitutional violation that is present at this case. And indeed, the California Supreme Court did not even mention Clemens in a decision in Mississippi until 1993, when the United States Supreme Court remanded the case of Bacigalupo v. California for reconsideration in light of the Supreme Court's decision in Stringer v. Black. This may give us some insight as to why the California Supreme Court in this case and the cases it cites relied upon the Zant formulation for looking at an invalid aggravating circumstance. Zant, as I mentioned earlier, is a case that involves a non-weighing State, and the presence of an invalid aggravating circumstance does not constitute an Eighth Amendment violation unless there is no other aggravating circumstances which makes the person eligible for a death sentence. The California Supreme Court has used a similar kind of language in People v. Zilka, which is decided by the California Supreme Court prior to Beardsley and cited by the as well as the district court. Now, in Zilka, the California Supreme Court's analysis is one that is identical to which the Court condemned in Clemens. In Zilka, the Court concluded, quote, there is one remaining valid felony murder, kidnapping for robbery special circumstance, which requires — which means that the claim that there is an invalid witness killing special circumstance is not prejudicial. That is precisely the kind of language that the United States Supreme Court found the Mississippi Supreme Court to be wanting in Clemens v. Mississippi. Moreover, the California Supreme Court does not mention harmless error, the Federal standard, or any other types of analysis that it used in determining whether or not this error was harmless. Instead, the Court considered two things. First, it considered that the jury properly considered the evidence that was presented to it, even absent the special circumstance, and that the jury could not reasonably have given inapplicable special weight any significant independent — the special circumstance any significant independent weight. Neither one of those conclusions is sufficient for Clemens. As Justice O'Connor and Justice Kennedy, in dissenting from Penzinger v. California, dealing exactly with the same kind of language that the California Supreme Court used in our case, noted, such analysis is, quote, irreconcilable with Clemens. The California Supreme Court's conclusion, moreover, makes little sense. All jury instruction errors would be harmless under this reasoning because none of them add to or subtract from the evidence considered to — by the jury. But I think most importantly, what is wrong with the California Supreme Court's opinion, it is applying the wrong standard. Vant v. Stevens has no business being raised in a 1978 death penalty statute case, and for that reason, Mr. Beardsley was deprived of any independent review on appeal of the invalid special circumstances that the California Supreme Court concluded were applied in his case. Let me turn to the district court's opinion, because it suffers from many of the same problems as the California Supreme Court's opinion. First, the district court's opinion, at least confusingly to me, cites a standard that is supposed to be used by State courts in determining whether or not to re-weigh aggravating and mitigating circumstances. A State court is in a position, faced with an invalid special circumstance, to re-weigh. They can remove the invalid special circumstance and decide that death is still appropriate if the State law permits the State supreme court to do so. The has the standard to apply in this particular context. Quote, In order to conduct such a review, the reviewing court must determine what the sentencer would have done absent consideration of the invalid factor. Well, that is a fine standard for a State supreme court in determining whether or not to re-weigh, whether or not aggravating circumstances outweigh mitigation, but it is not the standard that a Federal district court must use in determining whether or not to grant relief on this particular claim. That standard is Brecht v. Abrahamson, to look at whether or not this particular error had a substantial and injurious effect or influence on the jury's verdict. The district court then compounded its error by applying the California Supreme Court's reasoning in People v. Silva, and finding that an invalid special circumstance findings are harmless and do not have, quote, an adverse impact  And it does exhibit why the district court's conclusions with respect to why this may have been harmless is inappropriate. And finally, the district court relied on the same analysis. And you said that though Brecht is a lighter, is an easier standard, the less deferential, you know, that Brecht is an easier standard to meet. Your Honor, I don't believe it is in this context, because what you're looking at when you have a non-weighing State is if you have four aggravating circumstances and three of them are invalid, the inquiry does not amount to a constitutional violation if you have one valid aggravating circumstance. There is no constitutional claim that you have — that you can make, because what happens in a non-weighing State is that you are narrowing the focus of those people who are eligible for death. It is an eligibility criteria that does not amount to a constitutional violation. In this context, when you have a weighing of aggravation versus mitigation, the presence of an invalid special circumstance is an Eighth Amendment violation. That is a clear holding of Sanders. The question is whether or not the California Supreme Court corrected that error on appeal and whether or not the district court got the harmless error analysis correct below. What the California Supreme Court did and what the district court did was apply a non-weighing standard to a weighing State, which this Court in Sanders held to be inappropriate and required granting of relief. The final thing that the district court did was to rely on the same faulty analysis that was criticized by Justice O'Connor in Penzinger v. California. The district court found that the error was harmless because the jury had all the evidence promptly before it and, quote, was not asked to place any particular emphasis on the invalid findings made by the guilt-phased jury. Now, the question in this case is not whether or not the presence of the invalid special circumstances would have changed the verdict. It's not whether or not we would have had additional evidence presented or not presented with the presence of the invalid special circumstances, because that is what both the California Supreme Court and the district court were looking at. And that is what Justice O'Connor said is inappropriate. The evidence might be the same, but what is different in this case and what is different in a weighing State is that you have given legal effect to that evidence. And particularly in the context of this case, where the jury is told you must accept as true that a witness killing took place, two witness killings took place, and the inference that the prosecution drew from that special circumstance finding is that this is a particularly egregious crime because this defendant is cold in calculating and you must not give weight to the mitigation, is something that requires the jury to ask this court to consider for a certificate of appealability. That, to me, Your Honor, makes this case stronger than Sanders and certainly would require a conclusion that the issue, the district court's denial of the relief, is debatable among jurists. Finally, I should point out one aspect about this case that has not been raised in our papers. If a certificate of appealability should issue, the resolution of the merits of this claim, of this particular claim, are complicated by the State's insistence on setting an execution date tomorrow in the San Mateo Superior Court. Following the filing of the motion in this Court, the State served notice on the parties that they were going to seek an execution date at tomorrow's hearing. We were initially informed that they would ask for a date of January 25th. Last week, we asked the Superior Court in San Mateo to vacate the hearing date tomorrow in light of this Court's proceedings, and we were informed not only did the Superior Court deny our motion, but we were informed by the State that they had moved up the scheduled execution to January 19th. Our attempts to vacate the hearing in both the Superior Court and the Supreme Court have been denied, and as of yet, the State Attorney General's office has not been willing to stipulate to vacating the execution date. Thus, we are confronted with the very real possibility of litigation on the merits of this case under what I believe to be unnecessary and certainly extreme time pressures. And we believe that the Court should entertain expediting a briefing schedule on whether or not – a briefing schedule for the merits of this claim so that prior to having any execution date be reached, that all parties can understand how compelling the merits of this claim may be. One suggested schedule would be for us to file our brief next week sometime, and we are willing to file, of course, under the Court's discretion, to file within 6 days of today's date. Thank you, Your Honor. I'd like to reserve the rest of my time for rebuttal. Roberts. Mr. Gillette. Thank you, Your Honor, and may it please the Court. Let me begin by briefly responding to the jurisdictional point that was raised at the beginning of Mr. Lawrence's argument. It is true, Your Honor, that we did argue in our opposition that this needed to be a temporary stay or second petition requirements. That was in the context of our argument that a motion to stay the mandate should be judged by the same standards as a motion to recall the mandate, citing Calderon, Thomson, Calderon v. Thomson, which this Court concluded in its order was inapplicable. So I'm not going to pursue that any further. The extent to which the Court could issue the COA would depend upon whether it found exceptional – exceptional circumstances to continue the temporary stay of the mandate. We agree, we understand that this Court and other courts have concluded that a change in the law may constitute such an exceptional circumstance. But in the context of a Federal review, habeas corpus review of a State judgment, there are the additional comity and federalism issues and, of course, the AEDPA's requirement of a COA, even though we acknowledge that any examination of the merits of this or any of the other of the AEDPA. So the question is, does Sanders constitute a decision that is so exceptional and such a change that it would warrant granting the COA in this case? And to do that with respect to this particular issue that was raised in the – in the district court and as to which a COA was originally denied by the motions panel, the Court has to conclude not only that the petitioner has made an initial showing of a substantial denial of a constitutional right, but also that the district court's assessment of that – of that claim was debatable or wrong, that reasonable jurists would disagree. And that is – without that finding, the Court cannot issue the COA. And absent a finding that the COA is appropriate in light of Sanders, then there would be no reason to find exceptional circumstances warranting a stay of the mandate. As I indicated in my papers, we do take exception to the Court's conclusion in Sanders. But I understand that until such time, if ever, that it is overruled by this court or another court or by an en banc, it is the law of the circuit. So you can – What's the status of Sanders today? We are in the process of preparing an application to seek certiorari in that case. But for now it's – When's it due? I believe it's due within another – within 30 to 60 days. There is still some time running on that due date based on the finality of Sanders as to the panel. That – Sanders is final as to this Court. So we understand that at least for now it would – it would apply. And that's the – that's the test we have to look at in light of the case – of this particular case and the arguments that the Petitioner has made. Now – Well, you know, normally we'd probably wait for Sanders to become final before taking any action on this. But given your plan to – to set an execution date, I guess that's not possible. I think not, Your Honor. And – and I think that is not necessary because I do not believe that Sanders compels this Court to issue a COA on this issue. Now, Mr. Lawrence has spent a great deal of time talking about, first, why he thinks the California Supreme Court decision was inadequate for purposes of evaluating the error with respect to the striking of three of the four special circumstances. I think it's important to emphasize at the outset that as to one of those, it was a duplicative, multiple-murder special, which this Court, as far back as the Robert Harris litigation, has said does not raise a Federal issue. There was never a question that there were any more than two murders at issue here. So taking one of those out as a matter of State law really isn't at issue. The real question here is the striking of the witness-killing special circumstances. I am not prepared to concede in any way that the California Supreme Court's analysis was inadequate. We think it was. It's a little short today, doesn't it? It is. It isn't – it isn't perhaps as detailed as we might like. Of course, that's based in part on the conclusion of the California Supreme Court in Baja de Lupo that it's not a weighing – that California is not a weighing State. It didn't have to engage in that kind of analysis. But I don't think we have to consider the adequacy of the California Supreme Court decision. I think what we have to look at initially in this case is the district court decision because what you're looking at in issuing a COA is whether reasonable jurists could disagree with what the district court did. And the most significant distinction between this case and Sanders, of many distinctions that I'm going to talk about in a moment, is that there was no district court analysis. It simply concluded that the California Supreme Court did not err. It didn't go on to any other level of review, unlike the district court in this case, which did engage in that sort of additional review. And it's specifically worth noting, I think, that the district court in its analysis began by saying that it could not accept at face value the finding of harmless error that had been made by the California Supreme Court. It needed to engage in its own independent review. And it did so, citing Stringer v. Black, which is, of course, the most significant of the United States Supreme Court cases underpinning the decision in Sanders. And so the district court, with the framework of Stringer v. Black and all the cases that surround that, including Clemens and the others that Mr. Lawrence has discussed, examined what had happened in this case, determined that he – determined that the judge determined that she had to conduct an independent review, and examined that, and then went on to explore the evidence that had been presented by the prosecution in the case at the penalty phase, much of which was the same as that which was presented in the guilt phase. The judge also discussed the extensive mitigating evidence that was presented. And I think I have to pause here for a moment to comment on one of the points that Mr. Lawrence made about the mitigating case. His argument was that the defense in this case at the penalty phase, in terms of mitigation, was an attempt to show why this was an unusual event, why Mr. Beardsley's commission of these two murders was outside the norm for his behavior. Now, of course, he had a hard row to hoe, defense counsel at the trial, with that argument from the outset, because, of course, Mr. Beardsley was on parole for the commission of another murder that had occurred in Missouri. So the jury already knew, after the prosecution's aggravation case, that he had a prior murder that he had committed in another State, and that he was on parole for that. But in addition, at the guilt phase, the jury which heard the evidence that led them to convict him of the two murders with the special circumstances heard all the evidence that related to how the crime occurred. They knew that Mr. Beardsley was on parole. They knew all of that stuff. And Mr. Beardsley's defense at the guilt phase was that, despite having admitted to his involvement in those crimes, confessing the first time the police approached him and continuing to confess and testify that he was involved, attempted to diminish in some respect his involvement by saying he was acting under duress. That was his argument, that he was afraid of these other people, and therefore, he had to do something to make him look like he was involved so they would then kill him. The jury which determined guilt and made the special circumstance findings knew all that evidence, the same basic theory that went into the penalty phase mitigation. And they rejected it. And they found that, in fact, the witness-killing special circumstance did apply based on the law of California at that time, subsequently changed, and that, by the California Supreme Court, and the reason why they ultimately struck the priors in the Beardsley case as well. So going back to what the district court had done, looking at the aggravating evidence, looking at the extensive mitigation case, the Court noted, and I think it's important to note, the split by the jury on the penalty, making a determination that as to the murder of Patty Gedling, the one where Mr. Beardsley shot her in the head, that in that case, death was the appropriate sentence. That as to the murder of Stacy Benjamin, where he was participating actively with Fred Rutherford in choking her and then hitting her, and then ultimately, as this Court found in its opinion, killing her by cutting her throat, that for whatever reason, the jury determined that the involvement of Mr. Rutherford, along with Mr. Beardsley, warranted in that case, as to that murder, giving him life without possibility of parole. And this was an unusual case. And when we talk about the amount of time that the jury may have been deliberating on this, unlike most cases in California, the vast majority where there are multiple murders, whether it's two or three or four or however many, in the usual case, the jury is asked to determine what is the appropriate sentence in this case, looking at all of the crimes that were committed. They return one penalty verdict, either death or life without possibility of parole. In this case, and it's not unique in the sense that it's never happened before, but it is unusual, the jury was asked to look separately at the two murders. So needless to say, they were evaluating all the evidence, not only of what they heard related to the guilt and Mr. Beardsley's involvement and, of course, the commission of the murder in Missouri that they heard about, and all of that mitigation evidence that he put in, but they had to evaluate all of it in the context of the murder of Patty Gettling and in the context of the murder of Stacey Benjamin. It's not unreasonable that the jury took some additional time to make its deliberation in this case. So the district court, having looked at the aggravation, the mitigation, the split verdict, determined that nothing had occurred at the penalty phase which would have led the jury to place undue emphasis on the invalid special circumstances. And I think it's appropriate to keep in mind that the jury was instructed with respect to the way that they looked at the case, they were instructed on aggravation and mitigation, and they were told to take into account the factors in aggravation and mitigation. And the first factor that they were told was, from the instructions by the trial court, the circumstances of the crimes which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true. They were told to take a look at all of that package as one factor. The special circumstances, unlike many of the other cases, certainly like Stringer and some of the others the U.S. Supreme Court has looked at, the special circumstances were not denominated out as a series of additional aggravating factors. They were a part and parcel of that single aggravating factor of the facts and circumstances of the crime and the special circumstances. And finally, the district court concluded that all of the evidence which related to the commission of the crimes would still have come in before the jury, even if the witness-killing special circumstances had not been charged. And I think there is no question but that the district attorney could have and would have argued the same thing he argued in the guilt and penalty phases of this trial, even if there had not been a witness-killing special, namely that there was a motivation on all of these parties to clean up the mess they created when Patty Gettling was shot as she initially came into Mr. Beardsley's apartment. And Mr. Beardsley had a particular motive for that. They could disagree, there could be additional evidence on it, but the fact remains that he was on parole for a murder committed in Missouri. And it did occur in his apartment, and certainly he had a motive that the prosecution presented evidence to support and properly argued that he had an interest in getting rid of the evidence and the witnesses against him. So the district court decision clearly went through all the evidence. It did precisely what this Court did in Sanders. And remember the Court said in Sanders that even if the California Supreme Court review were inadequate, which it found that it was in that case, still before you can grant Federal habeas corpus relief with respect to a State conviction, you have to do the independent Federal analysis using the Brett test. Arguably, the district court in this case did, as Mr. Lawrence suggests, apply the beyond the reasonable doubt standard. And I think as Judge Paiez's question posed, that was a more rigorous standard than was required. There is no question that the judge understood what the U.S. Supreme Court had said in Stringer, that the judge was looking to that for guidance and was applying that to the facts of this case. So the question has to become, would reasonable jurists looking at all this evidence come to a different conclusion? That's what you have to decide to grant the COA. How do you compare what happened in this case and the record that we have with what happened in Sanders? Now, in Sanders, there was a single killing. And in the Court's opinion, it noted that there was no physical or overwhelming circumstantial evidence as to whether Mr. Sanders or the co-defendant delivered the fatal blow to the single victim in that case. Here, of course, we've got two victims. And this Court found in its opinion in this case that the evidence established that the fatal blows in both the cases, both with respect to the shooting of Patty Gettling in the head and the cutting of the throat of Stacey Benjamin, were wounds inflicted by the defendant, Mr. Beardsley. He physically participated, he was at both the murder scenes, and, of course, he was the only one of all the participants with the prior murder conviction. In the Sanders case, the only aggravation the prosecution presented, apart from the circumstances of the crime, was evidence of five prior robbery convictions. Here again, the jury knew that Mr. Beardsley was on parole for the commission of a murder. They heard the testimony relating to that crime and his admission that he had committed it as part of the penalty phase evidence. In Sanders, the defense attorney presented no mitigating evidence. He presented no argument in the penalty phase, apparently because his client did not want him to, and he agreed with that assessment or with that request by his client. In this case, in the Beardsley case, there was an extensive mitigation case. We know that there were many witnesses, friends, family, people who had contact with him, employers over the years, as well as the testimony of an expert, a mental health expert, that was also presented. To suggest that this case presents an even greater demonstration of entitlement to relief than Sanders, I think, is just absurd. If there is any comparison at all to be made between these two cases, if you can say that this claim now has more credibility, this Claim No. 39, in light of Sanders, if you look at them and compare them, Sanders absolutely does no good to the defendant in this case. Mr. Beardsley is not entitled to relief on Claim No. 39, and reasonable jurists could not disagree as to the decision by the district court in this case. Why are we issuing the COA as to what the district court did? Isn't it really the constitutional claim that he's attacked, his constitutional attack on the state court's judgment? Well, yes. We reviewed the district court's determination de novo. The district court ruled that on that particular issue. Melissa, it comes up in an habeas, and all that. The district court's ruling was unsummary judgment, so it's all de novo to us. I agree. You will do a de novo review. But in doing — in taking the quick look that you're required to do in order to grant the COA, you have to look at the record of the case and everything about it, and in part, I think you have to look carefully at what the district court did, because if reasonable jurists could not disagree with the decision of the district court rejecting this claim on the merits, then I think there's no basis for granting the COA. Now, alternatively, you could simply say, would reasonable jurists agree — or would reasonable jurists disagree that relief for any reason, whether it's because what the district court said, what the California Supreme Court said, that Mr. Beardsley ought to get relief on this particular claim. You can look at it any number of ways, but if you look at it in the context of this record, and you look at what this record established, particularly in light of what Sanders found to be significant in granting relief, Mr. Beardsley cannot obtain relief even if Sanders applies, even if Sanders is correct. And I think this Court's opinion that in rejecting the claims that were properly brought up demonstrates that in terms of its analysis of the evidence and the fact that the jury was given a full opportunity to fully consider all the mitigating evidence, the extensive mitigation that was put on. And I think it's important that the jury separately reviewed the two claims. Obviously, they weren't prejudiced as to death versus life. They evaluated each of the two murders independently. Unless the Court has questions, I believe that covers the points for the purposes of this argument. Roberts. Mr. Lawrence, if you'd like. Lawrence. Your Honors, if Mr. Beardsley was filing a Certificate of Appealability today from the district court on direct review, this Court, I think unquestionably, would grant a Certificate of Appealability. There's no question that after Sanders, the law has changed in three fundamental respects, and nothing the State has said has changed that. Sanders, for the first time, applied Clemens because California is a weighing State. Mr. Beardsley did not have the opportunity to argue that when he filed his first Certificate of Appealability motion. Sanders changed the way we look at the California Supreme Court's analysis, and Mr. Beardsley did not have the opportunity to argue that to this Court to permit an appeal of Claim 39. And finally, Sanders looked at how you apply brass in this context, and it looked at what you are allowed to do. You're not allowed to speculate as to what a jury did and did not do. You are looking objectively at what the jury did do and what the evidence was that the prosecution and the defense presented at trial, and how that would have been affected by giving legal weight to the special circumstances. Now, the Attorney General argues that the district court did do what it was supposed to do. But as I pointed out in my initial remarks, the district court used the Stringer analysis, certainly, but used the re-weighing standard, not the standard that is required for beyond a reasonable doubt. And of course, the jury did not have the benefit of what we now know today, is that the invalid special circumstances would not preclude them from considering the evidence that the defense presented. Now, the Attorney General argues that at the guilt phase, the jury had the exact same evidence that was presented in penalty phase. And that simply is not true. Any reading of the 11 witnesses presented in the mitigation phase of this case demonstrates, I think, fairly conclusively, that there was far more evidence presented in the mitigation phase about Mr. Beardsley's mental functioning, about Mr. Beardsley's uncharacteristic behavior during the time of this crime. There was no testimony that he spaced out during this crime presented at the guilt phase, but there was presented that kind of evidence at the penalty phase. And how do we know that had an effect in this case? We know it had an effect because the juror notes tell us something about what the jury was considering. Four of those notes talk about the psychological or psychiatric problems that Mr. Beardsley was facing and whether or not they can consider them. Now, what the issue was that they could not consider fully, because in the words of the United States Supreme Court, the thumb was on the death side of the scale, was that the aggravating circumstances, the special circumstances of witness killing in particular, forced them to reconsider how they were going to give weight to each of the individual facts they were presented. And throughout the proceeding, they were told to accept those special circumstance findings as true. The prosecution relied on the killing of a witness's special circumstance and his theory to disprove all of the mitigation that was presented by the defense. And that, to me, makes this case far more compelling than Mr. Sanders' case. Now, the length of the time argument that the Attorney General raises, I'm not exactly sure where the information comes from. But multiple murders have never been a problem for determining prejudice. This Court, in fact, in Sandoval v. Woodford, concluded that the presence of one capital murder, but also having several other capital – several other special circumstance murders did not affect the jury's – their determination of whether or not the issue was harmless or not. In Sandoval, we had a split verdict, much like we have here. One victim of the sentence was death. The other victim of the sentence was life. And just like – just like in this case, the error in that case skewed the verdict in favor of death unconstitutionally. Now, finally, the issue of whether or not the extensive evidence that was presented in mitigation cuts against us or for us, I think is fairly evident from the Sanders' opinion that if you are talking about a close case, and a close case in which there are 11 witnesses that give a substantial amount of mitigation that the jury is concerned about, because we know from the juror notes they were concerned about it, the extensive mitigation that was presented here makes this a close case. It doesn't detract from the constitutional invalidity of the special circumstances or the effect that those invalid special circumstances had on the jury. The question that we are facing today is that in light of Sanders, which made those three unequivocal new points of law, would Mr. Beardsley be entitled to a certificate of appealability if he was appealing it directly? And the answer, I think, unquestionably is yes. Now the question is, is there any jurisdictional problem with this Court correcting a misjudgment, correcting a denial of the ability to appeal Claim 39 originally? I think the exceptional circumstances that this Court has required in Ford – Ford and the mandate, I think, are amply demonstrated by the Sanders' opinion's change in the law. And I ask the Court to issue a certificate of appealability. Roberts, can I just ask one question, Mr. Lawrence? At the hearing scheduled for tomorrow for setting the execution date, what takes place at that hearing? Just setting the date? Well, we will argue that these proceedings prevent the Court from issuing an execution date, but we've already lost that issue twice before the Superior Court and once before the California Supreme Court. So all they do is just set the date? Correct. Is that a – is that an appealable order? It's not. We can go to the California Supreme Court and then ask for a stay of execution. And we certainly can ask this Court for a stay of execution. But based on my experience, the United States Supreme Court, confronted with a motion to vacate a stay of execution, really does need to have some understanding of the merits of the claim. And that's why we asked for an expedited briefing schedule to permit the U.S. Supreme Court, if there is a stay of execution that is in place, and the State appeals that to the U.S. Supreme Court to vacate that stay, the U.S. Supreme Court will have the benefit of this Court's consideration of the merits of the claim. When does – when do clemency proceedings kick in? Your Honor, we don't have a date for clemency. The Governor's office has not yet informed us as to what those clemency procedures are going to be or what our clemency – or even what our clemency petitions do. I see. But doesn't it – doesn't it usually require the exhaustion of all judicial remedies? In most cases, the Governor – Is it a practical matter that's the way it's done? Yes. In most cases, Your Honor, the Governor has not acted until the case is final for the courts. Thank you very much. Okay. Thank you. Thank you both for your arguments. They're very helpful to us, and we will take the matter under advice.
judges: Tashima, Thomas, Paez